IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| MANUFACTURERS AND TRADERS | ) | |
| TRUST COMPANY, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 8:16-cv-03346-GJH |
| | ) | |
| DEL CONCA USA, INC., et al., | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

_____ )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER OF INTERPLEADER AND OTHER RELATED RELIEF

Interpleader Plaintiff, Manufacturers and Traders Trust Company ("M&T"), by and through its undersigned counsel, submits this memorandum of law in support of its Motion for Entry of Order of Interpleader and Other Related Relief ("Motion").

## I.
## INTRODUCTION

M&T commenced the instant statutory interpleader action to determine which of the two interpleader defendants—Del Conca USA, Inc. ("Del Conca") and Nathaniel L. Akers ("Akers")—is entitled to $302,662.69 (the "Funds") currently being held in an M&T business checking account (the "Account") titled in the name of its customer, Akers.   Del Conca asserts that the Funds were procured by fraud.  M&T has made multiple attempts to contact Akers to determine whether he disputes the allegation of fraud or will authorize a return of the Funds to Del Conca.  Such efforts have been unsuccessful and M&T, therefore, remains subject to the potential competing claims of Akers and Del Conca to the Funds.

The Motion seeks entry of an order of interpleader.  Specifically, M&T seeks an order of the Court dismissing M&T from this action, discharging it from any further liability with respect to the Funds, and enjoining Del Conca and Akers from pursuing any action or proceeding against M&T related to the Funds.  An order of interpleader is appropriate in this case pursuant to 28 U.S.C. § 1335 because M&T, as a disinterested stakeholder of the Funds, faces potential competing claims to the Funds which subjects it to multiple liability.

In addition to an order of interpleader, M&T also seeks to recover its reasonable attorneys' fees and litigation expenses in the amount of $18,000.00.  A disinterested interpleader plaintiff is generally entitled to recover its attorneys' fees so long as the action was properly brought and the interpleader plaintiff did not contribute to or cause the dispute.  M&T satisfies these criteria.  And, the amount of attorneys' fees and expenses sought by M&T are reasonable under the *Lodestar* analysis.

Finally, M&T seeks an order of the Court pursuant to *Fed. R. Civ. P.* 67 authorizing M&T to deposit the Funds, less M&T's reasonable attorneys' fees and litigation expenses in the amount of $18,000.00, with the Court.   Such relief is necessary under 28 U.S.C. § 1335, which expressly requires that the subject of the interpleader action be deposited with the Court to award interpleader relief.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

On or about February 5, 2016, Akers opened the Account with M&T.  *See* Motion Exhibit A, Affidavit of Kenneth Krach in Support of Motion for Entry of an Order of Interpleader and Other Related Relief ("Krach Affidavit") ¶ 4.  On or about September 6, 2016, the Funds were transferred via wire (the "Wire Transfer") to M&T.  *Id.* ¶ 5.  The Wire Transfer was initiated by Del Conca from an account that it maintained with the financial institution,

2

Banca Monte Del Paschi Di Siena ("Banca Monte") and was wired with instructions to credit the Funds to the Account. *Id.* ¶ 6.

Shortly after the Wire Transfer, Del Conca contacted representatives of M&T, asserting to M&T that the Wire Transfer had been procured by fraud and requesting that the Funds be returned to Del Conca's account with Banca Monte. *Id.* ¶ 7. Based upon Del Conca's allegation of fraud and claim to the Funds, M&T, in accordance with its contractual and legal rights with respect to the Account, froze the Funds in the Account. *Id.* ¶ 8. Thereafter, M&T attempted, without success, to contact Akers to determine whether he disputed Del Conca's claim to the Funds or would authorize return of the Funds to Del Conca. *Id.* ¶¶ 9, 10.

Because M&T was unable to contact Akers, the Funds remain frozen in the Account. *Id.* ¶ 11. M&T is contractually and legally obligated to maintain funds that are transferred to a customer's business checking account for the benefit of its customer. Without receiving the consent of Akers, M&T cannot return the Funds to Del Conca without exposing itself to potential liability to its customer, Akers. *Id.*

Del Conca, however, has persisted in its assertion that the Funds were procured by fraud. Del Conca has sued M&T in the Supreme Court of New York, Case Number 655166/2016, seeking recovery of the Funds (the "New York State Court Action"). *Id.* ¶ 12. A true and accurate copy of the Complaint filed by Del Conca against M&T in the New York State Court Action is attached to the Motion as Exhibit B.

Because of the potential for competing claims to the Funds, M&T commenced the instant statutory interpleader against Del Conca and Akers seeking an order of interpleader. [Dkt. 1]. The Complaint was served on Del Conca's registered agent via U.S. Mail on or about October

11, 2016.  *See* Affidavit of Service of James T. Heidelbach [Dkt. 4].   Del Conca answered the Complaint on January 23, 2017 [Dkt. 11].

After having difficulty serving Akers personally with process, M&T sought an order of the Court authorizing it to serve Akers with process via U.S. mail and e-mail.  *See* Motion for Order Authorizing Alternative Service of Process as to Defendant, Nathaniel L. Akers [Dkt.10] (the "Alternative Service Motion").   As set forth more particularly in the Alternative Service Motion, the difficulties serving Akers arose from the fact that it appears that Akers is homeless. The Court granted the Alternative Service Motion, [Dkt. 10], and Akers was served on January 3, 2017 via U.S. Mail. *See* Affidavit of Service of Keith M. Lusby [Dkt. 15].

Akers received actual notice of this action because he telephoned the undersigned counsel and acknowledged that he had received the Complaint in the mail.  *Id.* ¶ 6.   Pursuant to the summons served on Akers, he was required to respond to the Complaint within twenty-one days of receipt thereof.  More than a month has passed since Akers was served, and Akers has not answered the Complaint or otherwise responded.

Through the date of this Motion, M&T has incurred legal fees and expenses in connection with this matter totaling $18,783.89.  Until an Order of Interpleader has been entered and M&T has been released from this case, M&T will continue to incur attorneys' fees and costs in connection with this action.  Krach Affidavit, ¶ 15.  Assuming that Del Conca does not object to the Motion and the attorneys' fees and expenses requested therein by M&T, M&T would be willing, as an accommodation to the parties and the Court, to cap its request for fees and expenses at $18,000.00.  *Id.* ¶ 16.

4

## III.
## LAW AND ARGUMENT

### A.    Interpleader Procedures

An interpleader action typically proceeds in two stages.  In the first stage, the Court determines whether the interpleader plaintiff has appropriately sought interpleader relief.  *Wells Fargo Bank, N.A. v. Eastham*, No. CV DKC 16-0386, 2016 WL 2625281, at *2 (D. Md. May 9, 2016).  In assessing whether a plaintiff has properly filed a Complaint for Interpleader, the Court generally considers five factors.  These factors are whether: (1) the Court has jurisdiction over the suit; (2) there is a single fund at issue; (3) there are adverse claimants to the single fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader.  *Metro. Life Ins. Co. v. Vines*, No. WDQ-10-2809, 2011 WL 2133340, at *2 (D.Md. May 25, 2011).

If the Court determines that interpleader is appropriate, the Court may direct that the funds be deposited with the Court, dismiss the interpleader plaintiff from the suit, discharge the interpleader plaintiff from any further liability with respect to the deposited funds, and enjoin the interpleader defendants from pursuing any action or proceeding against the plaintiff related to the subject property.  *Id.*; *see also* Wright et al., *Practice in Interpleader Actions—In General*, 7 Fed. Prac. & Proc. Civ. § 1714 (3d ed.) (hereinafter, "Wright and Miller") ("When the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead . . . .").

Additionally, if interpleader relief is warranted, the Court will order that the defendants interplead as to each other.  Thereafter, the case proceeds as any other civil matter between the

remaining parties as to the entitlement to the interpleaded funds or property. *See Pima Fin. Serv. Corp. v. Intermountain Home Sys., Inc.,* 786 F. Supp. 1551, 1553 (D. Colo. 1992).

**B.      M&T is Entitled to an Order of Interpleader.**

M&T appropriately invoked the interpleader mechanism and is therefore entitled to an order of interpleader because: (a) the Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1335; (b) a single fund—the Funds—are at issue; (c) Akers and Del Conca are potentially adverse claimants to the Funds; (d) the competing claims threaten to expose M&T to multiple liability over the Funds; and (e) M&T acted in good faith and there are not, therefore, any equitable reasons to deny M&T interpleader relief. *Metro. Life Ins. Co.*, 2011 WL 2133340, at *2.

**1.      The Court has Jurisdiction Over the Suit.**

M&T commenced this action pursuant to 28 U.S.C. § 1335, which provides:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
>
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the

> future order or judgment of the court with respect to the subject
> matter of the controversy.

28 U.S.C.A. § 1335 (West 2017).   28 U.S.C. § 1335 confers federal courts with original jurisdiction over interpleader actions if: (1) the amount in controversy exceeds $500; and (2) the claimants are minimally diverse.  *Selective Ins. Co. of Am. v. Norris*, 209 F. Supp. 2d 580, 582 (E.D.N.C. 2002). Both of the jurisdictional requirements are satisfied.[1]

The two claimants in this case, Del Conca and Akers, are of diverse citizenship as that term is defined by 28 U.S.C. § 1332 because they are citizens of different states.  Del Conca, as an entity incorporated under the laws of the State of Tennessee, is a Tennessee citizen. [Dkt. 11]; 28 U.S.C § 1332(c) ("[A] corporation shall be deemed to be a citizen of every state . . . by which it has been incorporated . . . ."). Akers, as an individual who is domiciled in the State of Maryland, is a Maryland citizen.  *Dyer v. Robinson*, 853 F. Supp. 169, 173 (D. Md. 1994) (citizenship for an individual is determined by a person's domicile).

Moreover, the amount in controversy far exceeds the $500 jurisdictional threshold.  The Funds that are the subject of this case are in excess of $300,000.00.

**2.      A Single Fund at Issue.**

This dispute centers around a single fund—the Funds.

**3.      There Are Adverse Claimants to the Funds.**

Del Conca and Akers are "adverse" claimants to the Funds.    Del Conca has made an express claim to the Funds, as it has repeatedly requested that M&T return the Funds to its account with Banca Monte and has sued M&T in the New York State Court Action seeking return of the Funds.

---

[1] Technically, deposit of the Funds with the clerk of the Court and adverse potential claimants to the interpleaded property are also jurisdictional requirements.  *See* 28 U.S.C. § 1335.  These elements are also satisfied, for the reasons more particularly discussed *infra*.

Akers, as the title owner of the Account in which the funds are being held, is also a claimant to the Funds.  M&T cannot take action with respect to the Funds unless and until Akers authorizes it to do so.  Krach Affidavit ¶11.  Akers has, to date, not authorized M&T to take any action with respect to the Funds, despite M&T's attempts to contact Akers.  Krach Affidavit ¶ 9.

It is of no consequence that Akers has not expressly made a claim to the Funds because a potential claimant is sufficiently adverse to satisfy the "adverse claimants" element.  *See* 28 U.S.C. § 1335 ("Two or more adverse claimants . . . are claiming or **may claim** to be entitled to such money or property." (emphasis added)); *see also Eastham*, 2016 WL 2625281 at *3 ("Section 1335 expressly provides that an interpleader action is appropriate to resolve *potential* claims." (emphasis in original)); *Krishna v. Colgate Palmolive Co*., No. 90 CIV. 4116 (CSH), 1991 WL 125186, at *2 (S.D.N.Y. July 2, 1991) ("[A]dverse claims need not have actually been asserted for an interpleader action to be proper. The language of both Rule 22 and 28 U.S.C. § 1335 allow for the invocation of interpleader for the possibility of prospective claims.").

Nor must the Court assess the relative merits of the competing claims.  The availability of an action for interpleader does not depend on the merits of the potential claims against the stakeholder.  *See, e.g.*, W*illiam Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355 (S.D. N.Y. 2008); *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F.Supp.2d 173 (S.D.N.Y. 2002).  This is because a "stakeholder should not be obligated at its peril to determine which of the two claimants has the better claim."  *John Hancock Mutual Life Ins. Co. v. Kraft,* 200 F.2d 952, 954 (2d Cir.1953).   As Wright & Miller's oft-cited treatise observes: "In the usual case, at least one of the claims will be quite tenuous."  Wright & Miller, *supra, When Interpleader Is Appropriate—In General*, § 1704.

In *Eastham*, this Court held that interpleader was appropriate even after all of the parties agreed on who was entitled to the interpleaded funds (proceeds of a trust account maintained with Wells Fargo Bank) because the Plaintiff "had a reasonable and legitimate fear that there may have been multiple claimants to the Disputed Funds" at the time litigation was commenced. *Eastham*, 2016 WL 2625281 at *3.  The same is true here.  By no fault of M&T's, the Funds were transferred to M&T by Del Conca with directions to credit Akers's Account.  Unless and until M&T receives authorization from Akers to return the Funds to Del Conca, Akers remains a potential competing claimant to the Funds in his Account.

    **4.**    **M&T is Actually Threatened With Multiple Liability.**

Del Conca asserts that the Funds properly belong to it and has sued M&T to recover the Funds in the New York State Court Action.   Thus, M&T has already been exposed to potential liability on account of the Wire Transfer for which its only role was furnishing the Account to Akers.  M&T could also be subject to liability to Akers.  If M&T returns the Funds to Del Conca, and Akers does claim an interest in the Funds, Akers could likewise sue M&T for breaching its contractual obligations to Akers.

    **5.**    **There are No Equitable Concerns Rendering Interpleader Inappropriate.**

In rare circumstances, the Court may withhold interpleader relief based on "equitable" considerations.  Typically, such considerations include whether the "stakeholder has been guilty of laches . . . has contributed to the development of the adverse claims or should be estopped from seeking interpleader relief for some other reason."  Wright & Miller, *supra*, at § 1709.

There are no such circumstances in the present case. M&T is not guilty of laches; it commenced this action less than a month after the Wire Transfer was initiated.  Similarly, it has not contributed to the development of the adverse claims.  M&T's sole role was furnishing the

Account to which the Wire Transfer was sent. It had no knowledge of the Funds or the circumstances giving rise to the transfer until the Wire Transfer was completed. M&T commenced this action in good faith to ensure that the rights of Del Conca, as the party claiming an entitlement to the Funds, and Akers, M&T's customer who is the title owner of the Account, were appropriately protected.

Because M&T properly sought interpleader relief, it is entitled to an order of interpleader dismissing it from this action, discharging it from any further liability in connection with the Funds, and enjoining the Defendants from pursuing any litigation against M&T regarding the Funds.

**C.   The Court Should Award M&T the Reasonable Attorneys' Fees and Litigation Expenses Incurred in Prosecuting This Action.**

**1.   As a Disinterested Stakeholder, M&T is Entitled to Recover its Attorneys' Fees and Litigation Expenses.**

It is settled law that "a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action where it is fair and equitable to do so*." Combined Ins. Co. of Am. v. Christian*, No. 1:14CV647, 2015 WL 5022379, at *3 (M.D.N.C. Aug. 24, 2015), quoting *Sun Life Assurance Co. of Canada v. Sampson,* 556 F.3d 6, 8 (1st Cir.2009). Generally, if a disinterested stakeholder is entitled to interpleader relief, it should also be permitted to recover its reasonable attorneys' fees from the interpleaded stake. As the First Circuit, quoting Wright and Miller, has explained:

> The test for awarding fees and costs is a typical equitable one that is very similar to the standard used to determine whether interpleader relief ought to be granted-should the interpleading party be required to assume the risk of multiplicity of actions and erroneous election. If not, then the stakeholder should be made whole. The test is not satisfied if the stakeholder has contributed to the need for interpleader by acting in bad faith or by unduly delaying in seeking relief.

*Sun Life Assur. Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009); *see also Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.,* No. PX 15-02953, 2017 WL 319521, at *1 (D. Md. Jan. 23, 2017) ("Typically [costs and attorneys' fees] are available only when the party initiating the interpleader is acting as a mere stakeholder, which means that the party has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." (alterations in original) (quoting Wright & Miller)).

The Court in *Christian* elucidated the circumstances under which an interpleader plaintiff is entitled to recovers its fees and expenses as a two-part test: (a) whether the party has acted in bad faith; and (b) whether the plaintiff is disinterested in the litigation.  *Christian*, 2014 WL 5022379 at *4; *see also N.Y. Life Ins. Co. v. Ortiz*, No. C.A. 14-74 S, 2015 WL 5793701, at *21 (D.R.I. Sept. 30, 2015) ("The general rule is that attorney's fees are awarded in interpleaders to compensate a totally disinterested stakeholder who had been, by reason of the possession of the fund, subjected to conflicting claims through no fault of its own." (citations and quotations omitted)).

M&T unequivocally meets the standard for recovering its reasonable attorneys' fees and litigation expenses.  M&T is completely disinterested in the outcome of this litigation.  It has admitted liability insomuch as it makes no claim to the Funds (other than for its reasonable attorneys' fees and expenses).  Krach Affidavit ¶ 14.  And, M&T has acted in good faith.  Prior to resorting to litigation, M&T tried multiple times to contact Akers.  *Id.* ¶ 10.  When such efforts were unsuccessful, M&T promptly commenced this action to obtain a determination of the proper recipient of the Funds.

2.      **M&T's Attorneys' Fees are Reasonable**.

M&T seeks attorneys' fees and expenses in the amount of $18,000.00.  In assessing

whether the fees sought by an interpleader plaintiff are reasonable, courts typically apply a

*Lodestar* analysis.  *See Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.,* No. PX 15-

02953, 2017 WL 319521, at *2 (D. Md. Jan. 23, 2017). The *Lodestar* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations imposed by the client or
> the circumstances; (8) the amount involved and the results
> obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12)
> awards in similar cases.

*Id.,* quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

Application of the relevant factors weighs in favor of awarding M&T its requested

attorneys' fees.  Attached to the Motion as <u>Exhibit C</u> are detailed billing records evidencing the

amount of time spent by Gebhardt & Smith LLP ("G&S") in connection with its representation

of M&T in this matter.  With respect to the amount of the fees charged by G&S, G&S discounted

the rates of its attorneys from their typical hourly rates. Its rates, therefore, are less than what

G&S typically charges in representing similar clients in similar matters. *See* Affidavit of James

T. Heidelbach, Esquire, Motion <u>Exhibit D</u> ("Heidelbach Affidavit") ¶ 10.   Moreover, the

undersigned counsel have substantial experience representing financial institutions and other

entities in interpleader matters and the amounts charged in this case are commensurate with those

charged by the undersigned and other similarly-qualified counsel in other interpleader cases. *Id.*

¶ 11.

The instant case also presented more difficult issues than the typical interpleader case. *Id.* ¶ 12. For example, because Akers appears to be homeless, M&T was unable to serve him personally with process. Accordingly, M&T had to seek and obtain an order authorizing alternative service of process on Akers. This required factual research into Akers's potential whereabouts, as well as legal research regarding the bases for authorizing alternative service of process on a person who is potentially homeless. Similarly, the inability to serve Akers personally required the preparation of a motion for alternative service of process, a pleading not typically required in an interpleader action. These efforts were successful, as not only did M&T succeed in obtaining the requested order, but also in providing Akers with actual notice of this action so that he was aware that his rights may be affected. *Id.*

Moreover, because Del Conca filed the New York State Court Action against M&T, M&T was forced to take actions to defend that suit, as well as to research the implications of that suit on the one pending before this Court. *Id.* By way of example, additional research was necessary to determine the rights of M&T to commence the instant action and to obtain a stay of the New York State Court Action if necessary. Given the unique legal issues present in this case, *Lodestar* factors 1 (the labor and time necessary), 2 (difficulty of issues), 3 (skill necessary), all weigh in favor of awarding M&T its requested fees.

Application of the other *Lodestar* factors also justifies the fees sought by M&T. Due to the pendency of the New York State Court Action, M&T was forced to act quickly with respect to seeking an order of interpleader (factor 7). And, the amount of the fees sought is less than ten percent of the total amount of the Funds M&T seeks to interplead (factor 8).

Finally, and most significantly, the amount of fees sought by M&T are similar to fees incurred by financial institutions in similar types of interpleader cases. Heidelbach Affidavit ¶

13.   Likewise, this Court and other Federal Courts have awarded similar amounts to interpleader plaintiffs, particularly where the interpleader plaintiff confronted issues abnormal to the interpleader process.[2]  *See, e.g.*, *Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953, 2017 WL 319521, at *3 (D. Md. Jan. 23, 2017) (awarding interpleader plaintiff, a financial institution, attorneys' fees in the amount of $19,699.51); *Mass. Mutual Life Ins. Co. v. Sanders,* 787 F.Supp.2d 628 (S.D. Tex. 2011) (awarding insurance company interpleader plaintiff reasonable attorneys' fees in the amount of $20,392.11); *Rhoades v. Casey*, 196 F.3d 592, 595 (5th Cir. 1999) (affirming attorneys' fees award of $23,955.21); *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 204 F.R.D. 47 (S.D.N.Y. 2001) (awarding $17,965.68 in attorneys' fees to interpleader plaintiff).

**D.      M&T Should Be Permitted To Deposit The Funds into the Registry of the Court.**

To award statutory interpleader relief, the stakeholder must deposit the disputed property with the registry of the Court.  *See* 28 U.S.C. § 1335 (stating that interpleader relief is appropriate if, among other things, "the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court . . . .").  Prior to depositing funds with the Court, however, *Fed. R. Civ. P.* 67(a) requires a party to provide notice to all parties of its intent to do so and to obtain leave of the Court.   So that the Court may award

---

[2] While there are cases in which lesser amounts have been deemed appropriate, such cases rest on the assumption that, in a typical case, little effort is required to obtain an order of interpleader. Wright & Miller, *supra*, at § 1719  ("In the usual case the fee will be relatively modest, inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder.").   For the reasons set forth above, this case was not typical and such cases are therefore inapposite.

the relief authorized by 28 U.S.C. § 1335, M&T requests the entry of an order authorizing it to deposit the funds that are the subject of this case with the Court.

Further, to streamline the process and to not further burden the Court, M&T also requests that, rather than deposit the entire amount of the Funds with the Court, it instead authorize M&T to withhold the attorneys' fees and expenses requested by it and approved by the Court. If this Court were to approve the amount requested by M&T, M&T would deposit the sum of $284,662.69 with the registry of the Court, which is the total amount of the Funds less the $18,000.00 in attorneys' fees and expenses sought by M&T.

## IV.
## CONCLUSION

For all of the foregoing reasons, M&T requests that the Motion be granted and that the Court enter an Order: (a) dismissing M&T from this action; (b) discharging M&T from any further liability with respect to the Funds; (c) enjoining Del Conca and Akers from pursuing any action or proceeding against M&T related to the Funds, including, but not limited to, the New York State Court Action; (d) awarding M&T attorneys' fees in the amount of $18,000.00; (e) authorizing M&T to deposit the Funds with the registry of the Court, less the amount of reasonable attorneys' fees incurred by M&T in the amount of $18,000.00; (f) and granting M&T such other relief as the Court determines may be just and proper.

Respectfully submitted,

Dated: February 10, 2017

*/s/ James T. Heidelbach*
James T. Heidelbach (Bar No. 07715)
Keith M. Lusby (Bar No. 05596)
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202-3281
Telephone:  (410) 752-5830
jheid@gebsmith.com
klusby@gebsmith.com

*Attorneys for Plaintiff, Manufacturers and Traders Trust Company*

16